IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
*Southern Division*

| | | |
|---|---|---|
| OSMAN SESAY, | * | |
| Plaintiff, | * | |
| v. | * | Case No.: 8:18-cv-01924-PWG |
| DAVID WOOLSEY et al., | * | |
| Defendants. | * | |

* * * * * * * * * * * * * *

## MEMORANDUM OPINION

In January 2018, Osman Sesay stood trial for attempted first-degree murder and use of a firearm in the commission of a violent felony. A jury acquitted him. Following his release from prison, Mr. Sesay filed this lawsuit against the Montgomery County police detective who secured the arrest warrant, accusing him of weaving false or misleading information into the warrant application. The suit also names two other members of the county police force as defendants, on the ground that they either directed the detective to apply for the warrant or assisted him in an allegedly deficient investigation.

Mr. Sesay's Amended Complaint brings identical claims against all three policemen. Specifically, it would hold them liable for violating the Fourth and Fourteenth Amendments to the U.S. Constitution, as well as analogous provisions under the Maryland Declaration of Rights. It also asserts claims of false arrest and false imprisonment under Maryland common law.

Defendants seek to dismiss all claims. First, they argue the suit must fail because the arrest was made pursuant to a facially valid warrant. Next, they argue they are entitled to

1

qualified immunity because a reasonably objective police officer would have believed there was probable cause to arrest Mr. Sesay. Finally, they ask me to dismiss the claims against two of the policemen, Sergeant Brian Merryman and Detective Rodney Campbell, in light of the negligible roles they played in securing the arrest.

I agree with Defendants that a number of the claims Mr. Sesay has asserted must be dismissed. To begin, I am dismissing all claims against Sergeant Merryman and Detective Campbell, as I agree that the allegations against them do not state a plausible claim for relief. I am also dismissing the two common law claims against the remaining defendant, Detective David Woolsey, as the case law makes clear that these torts do not lie against a police officer who, rather than arresting the plaintiff, merely sought a warrant for his arrest. *See Humbert v. O'Malley*, No. WDQ-11-0440, 2014 WL 1266673, at *15 n.51 (D. Md. Mar. 25, 2014); *Montgomery Ward v. Wilson*, 664 A.2d 916, 927 (Md. 1995). I am allowing Mr. Sesay to continue litigating his claims under the federal and state constitutions, but only to the extent they allege an unreasonable seizure.

## FACTUAL BACKGROUND

The history of this case starts with a shooting.[1] The victim, Thierno Bah, sought treatment for a gunshot wound at Holy Cross Hospital in Silver Spring, Maryland, on July 12, 2017. Am. Compl. ¶ 13, ECF No. 4. He was soon transferred to the trauma unit at Suburban Hospital in Bethesda, Maryland, where staff assessed his injuries as non-life-threatening. *Id.* ¶ 16.

---

[1] The facts of the case are taken from the Amended Complaint (ECF No. 4) and are assumed to be true for purposes of ruling on Defendants' motion to dismiss. *See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012).

While there, a Montgomery County Police Department detective, identified in the Amended Complaint as Detective Horwitz, questioned Mr. Bah about the shooting. *Id.* ¶ 17. Mr. Bah explained it happened during an altercation that afternoon at the corner of Wexhall Drive and Almanac Road in Silver Spring. *Id.* ¶ 18-21. He was there at the request of a friend, Ricardo, who wanted "back up" while trying to collect a debt. *Id.* ¶ 18. The two of them drove to the intersection, where they encountered a man Mr. Bah knew as "Josh" and two other people he did not recognize, both of whom were seated in a gray sedan. *Id.* ¶ 19-20. When Ricardo, later identified as Ricardo Malcolm, got into an argument with Josh, a man exited the sedan and fired a shot at Mr. Bah. *Id.* Mr. Bah said he "could not recognize the man who shot him and that he did not know what the [gunman] looked like, but that Ricardo would be able to" identify him. *Id.* ¶ 21.

The initial investigation did not corroborate Mr. Bah's version of events. When Montgomery County police officers promptly canvassed the area where, according to Mr. Bah's account, the shooting took place, the officers did not find any blood, shell casings, or witnesses. *Id.* ¶ 24. There were likewise no reports of gunshots or other loud noises. *Id.* ¶ 24.

Detective Horwitz interviewed Mr. Malcolm the following day. *Id.* ¶ 26. Mr. Malcolm said he was not with Mr. Bah on July 12 and did not know anything about a shooting. *Id.*

Detective Woolsey, the case's lead investigator, continued to work the case over the next few weeks, reporting to his supervisor, Sergeant Brian Merryman. *Id.* ¶ 28, 30. On July 25, 2017, Detective Woolsey scrawled the following note in the case file: "Sergeant wants to move on any suspects that we can. Advised him that Bah will likely *not* cooperate, or fake cooperation

3

and ID a person he knows is not the suspect."[2] Case Notes 2, ECF No. 13-9 (emphasis in original).

Despite his reservations, Detective Woolsey and a colleague, Detective Rodney Campbell, persuaded Mr. Bah to come to the station to participate in a photo array, which took place on August 2, 2017. *See* Am. Compl. ¶ 29, 34-35. Mr. Bah identified one of the individuals in the array as "Josh" (separately identified as Josh Touré), the man who had been arguing with Mr. Malcolm at the time of the shooting. *See id.* ¶ 36.

According to the Amended Complaint, Mr. Bah told Detective Campbell just before the array "that he did not know who the shooter was," but that Mr. Malcolm did, and he had directed Mr. Bah to the gunman's Instagram page. *Id.* ¶ 35. Mr. Bah provided Detective Campbell with the suspect's Instagram handle and sent him a photo that had been pulled off the Instagram page. *Id.* ¶ 35, 37. Detective Campbell later ran the photo through a facial recognition program, which identified the suspect as Mr. Sesay. *Id.* ¶ 37.

Mr. Bah returned to the station two days later for a second photo array. *See id.* ¶ 38. This time, the array included a photo of Mr. Sesay. *See id.* Mr. Bah identified him as the shooter. *See id.* ¶ 42.

Detective Woolsey applied for an arrest warrant for Mr. Sesay three days later, on August 7, 2017. *Id.* ¶ 40. The application recounted Mr. Bah's telling of events, then stated: "Additional investigation by the applicant identified the shooter as Osman Sesay, and that Sesay and Toure are known associates. On August 5th, 2017 Bah identified Sesay's photo in a photo array as the person who shot him." Appl. for Statement of Charges 2, ECF No. 13-5. A

---

[2] Mr. Sesay attached a portion of Detective Woolsey's case notes to the Amended Complaint. *See* ECF No. 4-1. Defendants enclosed what appears to be the complete document along with their motion to dismiss. *See* ECF No. 13-9.

4

commissioner reviewed the application and issued an arrest warrant along with a statement charging Mr. Sesay with first-degree assault, conspiracy to commit first-degree assault, and use of a firearm in the commission of a crime of violence. *See* Arrest Warrant, ECF No. 13-7; Statement of Charges, ECF No. 13-6.

Mr. Sesay turned himself in to the Montgomery County jail on August 11, 2017. Am. Compl. ¶ 51. He faced trial on January 20, 2018, on charges of attempted first-degree murder and use of a firearm in the commission of a violent felony. *See id.*; Indictment, ECF No. 13-10. A jury acquitted him on all counts. Am. Compl. ¶ 56.

Mr. Sesay filed this lawsuit on June 26, 2018, naming Sergeant Merryman and Detectives Woolsey and Campbell (collectively, "Defendants") as defendants. *See* Compl., ECF No. 1. His Amended Complaint asserts four claims against all Defendants: (1) violations of Articles 24 and 26 of the Maryland Declaration of Rights, (2) violations of the Fourth and Fourteenth Amendment to the U.S. Constitution, (3) false arrest, and (4) false imprisonment. *See* Am. Compl. ¶¶ 57-82.

Defendants seek to dismiss the Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Mot. to Dismiss 1. They argue, first, that Mr. Sesay's claims must fail because his arrest was made pursuant to a facially valid warrant and that, anyway, it was supported by probable cause. *See* Defs.' Mem. 6-13. They also argue that Defendants are entitled to qualified immunity. *See id.* at 16-22. Lastly, they urge me to dismiss all claims against Sergeant Merryman and Detective Campbell on the ground that the allegations against them do not state a claim for relief. *See id.* at 23-24.

The parties have fully briefed their arguments. *See* ECF Nos. 13, 17, 19. No hearing is necessary. *See* Loc. R. 105.6.

**STANDARD OF REVIEW**

Defendants have framed their motion as a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See* Defs.' Mem. 5-6, 9. "A Rule 12(b)(6) motion tests the sufficiency of a complaint; it does not, however, 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To overcome the motion, the "complaint 'must contain sufficient facts to state a claim that is plausible on its face.'" *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty.*, 684 F.3d 462, 467 (4th Cir. 2012) (quoting *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011)). The court, in reviewing the motion, "'must accept as true all of the factual allegations contained in the complaint' and 'draw all reasonable inferences in favor of the plaintiff.'" *Kensington Volunteer Fire Dep't*, 684 F.3d at 467 (quoting *Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)).

Though a defendant may style a motion as a Rule 12(b)(6) motion to dismiss, it may, at times, be more appropriate, or even necessary, for the court to treat the motion as a motion for summary judgment under Rule 56. In particular, a court must apply Rule 56 "when the motion to dismiss or exhibits present matters outside the nonmoving party's pleadings and the district court does not exclude such matters." *Pueschel v. United States*, 369 F.3d 345, 353 n.3 (4th Cir. 2004); *see* Fed. R. Civ. P. 12(d).

That is not to say, though, that a district court must "treat a motion to dismiss as a motion for summary judgment simply because the moving party includes exhibits with its motion." *Id.* Rather, "[a] court passing on a motion to dismiss may consider attachments to a complaint or the

motion to dismiss if 'integral to the complaint and authentic.'" *Leichling v. Honeywell Int'l, Inc.*, 842 F.3d 848, 851 (4th Cir. 2016).

## DISCUSSION

Mr. Sesay seeks to hold all three defendants liable for all of the claims he asserts. It is abundantly clear, though, that the Amended Complaint's legal claims do not implicate the three police officials equally. I will begin my analysis, accordingly, with a look at the role Sergeant Merryman and Detective Campbell played in the events at issue. I will then consider Mr. Sesay's claims under Maryland common law before turning to his federal constitutional claims under 42 U.S.C. § 1983 and then, finally, his claims under the Maryland Declaration of Rights.

A.

The Amended Complaint does not distinguish among the three police officials it names as defendants, asserting the same claims against all of them regardless of the extent of each man's involvement in Mr. Sesay's arrest. It is clear to me, though, that Mr. Sesay's pleading does not come remotely close to stating a claim for relief against Sergeant Merryman or Detective Campbell.

The thrust of Mr. Sesay's grievance is that the Montgomery County police should not have arrested him because they lacked probable cause to suspect that he had committed a criminal offense (or even, for that matter, that a crime had occurred). *See* Am. Compl. ¶ 12; Pl.'s Opp'n ¶ 2. He accuses Detective Woolsey, in particular, of "purposely and in bad faith" providing misleading information in the arrest warrant application, which, when approved by the commissioner, resulted in Mr. Sesay's arrest and prosecution. Am. Compl. ¶ 41.

Mr. Sesay argues that Sergeant Merryman is liable too, because he "directed Woolsey to seek a warrant without probable cause." Pl.'s Mem. He bases this assertion on Detective

7

Woolsey's case notes, a portion of which Mr. Sesay enclosed as an exhibit to the Amended Complaint. *See* ECF No. 4-1. Citing to this exhibit, the Amended Complaint alleges: "Woolsey made a note in his case file that he told Merryman . . . that Bah would likely identify the wrong man and that Merryman told Woolsey to move anyway." Am. Compl. ¶ 32.

But that is not what the note says. Detective Woolsey's exact words were: "Sergeant wants to move on any suspects that we can." ECF No. 4-1. This is hardly an instruction to violate the law. If anything, the instruction to "move on any suspects *that we can*" suggests the sergeant expected Detective Woolsey to proceed lawfully (if expeditiously), recognizing that police authority to effect an arrest is anything but boundless. *Id.* (emphasis added).

Even still, Mr. Sesay's own chronology of events undermines his claims against the sergeant. By his own account, the conversation between Sergeant Merryman and Detective Woolsey took place "[o]n or about July 25, 2017," when Detective Woolsey made a note of it in the case file. Am. Compl. ¶ 30-32. That was eight days *before* Mr. Sesay even became a suspect in the case and ten days before Mr. Bah identified Mr. Sesay in a photo array. *See id.* ¶¶ 35, 38. To conclude from this, as Plaintiff does, that Sergeant Merryman "directed Woolsey to seek a warrant without probable cause" is specious. Pl.'s Mem. 12. The claims against the sergeant are not plausible, and for this reason, they must be dismissed. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

The same is true of the claims against Detective Campbell. Indeed, Mr. Sesay's response in opposition to the motion to dismiss does not even dispute Defendants' argument that these claims cannot withstand a Rule 12(b)(6) motion. The fact is, the full extent of the allegations against Detective Campbell is that he helped Detective Woolsey persuade Mr. Bah to come to the police station and that his method of administering the two photo arrays did not abide by

8

Maryland law. *See* Am. Compl. ¶¶ 34, 36, 39. None of this states a claim for relief under any legal theory Mr. Sesay has asserted. *See Humbert v. O'Malley*, No. WDQ-11-0440, 2014 WL 1266673, at *8 n.31 (D. Md. Mar. 25, 2014) (rejecting an arrestee's attempt to hold police officers liable under § 1983 for "suggestive identification procedures"). As there is no allegation that Detective Campbell participated in the preparation or submission of the application for an arrest warrant, the claims against him must be dismissed.

B.

I turn now to Mr. Sesay's claims under Maryland common law. Count III of the Amended Complaint seeks damages for false arrest. *See* Am. Comp. ¶¶ 72-77. Count IV asserts the closely related claim of false imprisonment. *See id.* ¶¶ 78-82.

In Maryland, "[t]he elements of false arrest and false imprisonment are identical." *Heron v. Strader*, 761 A.2d 56, 59 (Md. 2000). To establish either cause of action, the plaintiff must show there was (1) a deprivation of liberty, (2) without consent, and (3) without legal justification. *See id.*

Here, a claim of false arrest is patently unsustainable because "only the arresting officer may be liable for false arrest." *See Humbert*, 2014 WL 1266673, at *15 n.51 (citing *Green v. Brooks*, 725 A.2d 596, 607 (Md. Ct. Spec. App. 1999)). Detective Woolsey did not arrest Mr. Sesay. His efforts to secure an arrest warrant may well have precipitated Mr. Sesay's arrest, but they did not "create a 'present restraint of liberty.'" *Green*, 725 A.2d at 607 (quoting *Davis v. DiPino*, 708 A.2d 357, 383 (Md. Ct. Spec. App. 1998), *aff'd in part and vacated in part*, 729 A.2d 354 (Md. 1999)). That being the case, I must dismiss Count III.

A claim of false imprisonment, by contrast, can reach individuals other than the arresting officer. *See Montgomery Ward v. Wilson*, 664 A.2d 916, 927 (Md. 1995). In particular, the tort

will lie against "a third party who wrongfully instigates another's *warrantless* arrest." *Id.* (emphasis added). But where, as here, the arrest was "made by a police officer executing a facially valid warrant," *id.* at 928, the person who procured the warrant cannot be liable for false imprisonment. "Rather, the extent that the instigator acts maliciously to secure the warrant for the plaintiff's arrest, the plaintiff's cause of action against the instigator is malicious prosecution."[3] *Id.* at 927.

Here, police obtained a warrant for Mr. Sesay's arrest, and Mr. Sesay has not argued that it lacked facial validity; on the contrary, he contends that Detective Woolsey "purposely trie[d] to make it seem, to the issuing magistrate," that the police, having conducted a thorough investigation, had probable cause for Mr. Sesay's arrest. Am. Compl. ¶ 44. On these facts, "the tort of false imprisonment does not lie against an individual who wrongfully procures the plaintiff's arrest." *Montgomery Ward*, 664 A.2d at 928. Accordingly, Count IV also fails.

C.

I will next consider Count II, which seeks to hold Detective Woolsey liable for violating federal constitutional rights secured under 42 U.S.C. § 1983. *See* Am. Compl. ¶¶ 62-71. "Section 1983 of Title 42 creates a cause of action against any person who, acting under color of state law, abridges a right arising under the Constitution or laws of the United States." *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013). This provision, "of course, is not an independent source of substantive rights, but simply a vehicle for vindicating preexisting constitutional and statutory rights." *Safar v. Tingle*, 859 F.3d 241, 245 (4th Cir. 2017). Here, Mr. Sesay argues Detective Woolsey violated his Fourteenth Amendment right to due process and his Fourth

---

[3] Mr. Sesay has not asserted a claim of malicious prosecution under Maryland common law. I will therefore refrain from opining on whether the facts asserted in the Amended Complaint might support such a claim.

10

Amendment right "to be free from arrest and detention without probable cause, legal excuse, or justification and without a valid warrant." Am. Compl. ¶ 64.

I will start with the Fourteenth Amendment claim, as this claim is easily dismissed. As the Fourth Circuit has explained, "the Due Process Clause is not the proper lens through which to evaluate law enforcement's pretrial missteps." *Safar*, 859 F.3d at 245 (holding that the Fourth Amendment, and not the Fourteenth, supplies the "only actionable ground for relief" against police officers who allegedly failed to withdraw arrest warrants after learning the charges were erroneous); *see Taylor v. Waters*, 81 F.3d 429, 435-36 (4th Cir. 1996) (holding that a criminal defendant's assertion that the arresting officer "failed to disclose exculpatory evidence does not allege a deprivation of any right guaranteed under the Due Process Clause of the Fourteenth Amendment"). More appropriate, rather, is the Fourth Amendment, which "provides an explicit textual source of constitutional protection against unreasonable seizures and arrests." *Khan v. Howard Cty.*, No. CCB-17-0190, 2017 WL 3334857, at *2 (D. Md. Aug. 3, 2017) (quoting *Safar*, 859 F.3d at 245). "For that reason, § 1983 claims of false arrest, false imprisonment, and malicious prosecution are considered under the Fourth Amendment, not the Fourteenth Amendment." *Id.*

Turning, now, to Mr. Sesay's Fourth Amendment claim, I observe that the Amended Complaint alleges Detective Woolsey "acted intentionally to violate" his constitutional rights by seeking to secure his arrest in the absence of probable cause. Am. Compl. ¶ 63. Faced with substantially similar allegations, the Fourth Circuit has found it appropriate to draw on "certain elements of the common law tort" of malicious prosecution. *Evans v. Chalmers*, 703 F.3d 636, 647 (4th Cir. 2012); *see Durham v. Horner*, 690 F.3d 183, 188 (4th Cir. 2012); *Lambert v. Williams*, 223 F.3d 257, 261-62 (4th Cir. 2000). In such cases, it is said that to state a claim, the

plaintiff "must allege that the defendant (1) caused (2) a seizure of the plaintiff pursuant to legal process unsupported by probable cause, and (3) criminal proceedings terminated in plaintiff's favor." *Evans*, 703 F.3d at 647.

Here, there does not appear to be any dispute that Mr. Sesay has adequately pleaded the first and third elements. The major point of contention, it seems, is whether the allegations in the Amended Complaint show that the police lacked probable cause for his arrest.

Mr. Sesay insists they do. Whether he is correct about this is a question on which I will momentarily defer, because even if he is, Detective Woolsey may still be entitled to qualified immunity. *See Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991). This doctrine shields police officers and other government officials from liability for civil damages under § 1983 "when they perform their duties reasonably." *Wilson v. Prince George's Cty.*, 893 F.3d 213, 219 (4th Cir. 2018) (quoting *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)). That is to say, it "gives government officials breathing room to make reasonable but mistaken judgments." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

To assess whether an officer is entitled to qualified immunity, courts must make two determinations: (1) "whether the facts alleged or shown, taken in the light most favorable to the plaintiff, establish that the officer's conduct violated the plaintiff's constitutional right," and (2) "whether the right at issue was 'clearly established' at the time of the officer's conduct." *Wilson*, 893 F.3d at 219 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)). "The district court has discretion in deciding which prong of the qualified immunity analysis should be addressed first." *Humbert*, 2014 WL 1266673, at *7.

Here, I need only consider the first prong. The question, for purposes of a qualified immunity analysis, is not whether Detective Woolsey had probable cause to procure Mr. Sesay's arrest, but whether "an objectively reasonable officer could have believed that probable cause existed." *Merchant v. Bauer*, 677 F.3d 656, 662 (4th Cir. 2012); *see Torchinsky*, 942 F.2d at 260.

In *Torchinsky v. Siwinski*, the Fourth Circuit explained that a magistrate's determination of probable cause supports an inference that an officer's actions in seeking an arrest warrant were objectively reasonable. 942 F.2d at 262. This inference, though, is not dispositive. "The presumption of reasonableness attached to obtaining a warrant can be rebutted where 'a reasonably well-trained officer in [the defendant's] position would have known that his application failed to establish probable cause and that he should not have applied for the warrant." *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 345 (1986)).

Mr. Sesay's Amended Complaint alleges that the only evidence linking him to the July 12, 2017 shooting was the photo array in which Mr. Bah identified him as the gunman. Defendants, citing the Fourth Circuit's opinion in *Torchinsky*, argue this should have been enough to satisfy an objectively reasonable officer, stating: "It is surely reasonable for a police officer to base his belief in probable cause on a victim's reliable identification of his attacker." Defs.' Mem. 10 (quoting *Torchinsky*, 942 F.2d at 262). Note, though, that *Torchinsky* says the identification must be "reliable." 942 F.2d at 262; *see Veney v. Prince George's Cty.*, No. 1313, 2018 WL 1778644, at *3 (Md. Ct. Spec. App. Apr. 13, 2018) ("A witness's positive identification of a suspect may establish probable cause if it constitutes '*reasonably trustworthy information*.'" (emphasis added) (quoting *Evans v. State*, 274 A.2d 653, 656 (Md. Ct. Spec. App. 1971))). Here, the Amended Compaint alleges that the identification was compromised because

13

Mr. Bah, by his own admission, did not recall what the gunman looked like but, rather, was relying on Mr. Malcolm's claim that the man in the Instagram photo, later identified as Mr. Sesay, was the shooter. *See* Am. Compl. ¶¶ 21, 35-37. Detective Woolsey should have known this, because he was the lead investigator on the case and had conferred with Detective Horwitz on July 13, 2017, not long after Detective Horwitz interviewed Mr. Bah. *See id.* ¶¶ 23, 27. Among the statements Mr. Bah allegedly made during that interview was "that he could not recognize the man who shot him and that he did not know what the man who shot him looked like." *Id.* ¶ 21.

It stands to reason, too, that in writing about the photo array in the warrant application, Detective Woolsey ought to have had at least some knowledge about the circumstances of that photo array. What is especially notable about those circumstances, as alleged, is that Detective Campbell only knew to include Mr. Sesay's photo in the array because Mr. Bah had previously sent him Mr. Sesay's Instagram photo. *Id.* ¶ 38. And Mr. Bah, in the course of forwarding the photo, had explained to Detective Campbell that he "did not know who the shooter was," noting that the source of the photo was Mr. Malcolm.[4] *Id.* ¶ 35.

All of this, if true, could not help but undermine an officer's confidence in the reliability of Mr. Bah's identification. Indeed, even before the back-to-back photo arrays, Detective

---

[4] Defendants have submitted a video of Mr. Bah's interaction with Detective Campbell. *See* ECF No. 16. Their motion to file the video, which I granted, argued the video was integral to Plaintiff's Amended Complaint and could be considered on a motion to dismiss. *See* ECF No. 15. I have my doubts about this, as it is not clear on the face of the Amended Complaint whether counsel for Mr. Sesay relied on the video when drafting his pleading. *See Gersbacher v. City of New York*, 134 F. Supp. 3d 711, 719 (S.D.N.Y. 2015) ("[I]n order for a document extraneous to the complaint to be considered at the motion to dismiss stage, the plaintiff must have *relied upon it* in drafting the complaint . . . ." (emphasis in original)); *see also Robinson v. Am. Honda Motor Co.*, 551 F.3d 218, 222-23 (4th Cir. 2009) (explaining that, on a motion to dismiss, a court may consider a document that was "integral to and explicitly relied on in the complaint"). In any case, I have reviewed the video, and it does not contradict Mr. Sesay's allegations that Mr. Bah denied knowing the shooter and identified Mr. Malcolm as the source of the Instagram photo.

Woolsey had put his reservations in writing, noting that he had advised Sergeant Merryman that Mr. Bah may "fake cooperation and ID a person he knows is not the suspect." ECF No. 4-1. Assuming, as I must, that the allegations in the Amended Complaint are true, I cannot conclude that an objectively reasonable officer could have believed that probable cause existed for Mr. Sesay's arrest. Detective Woolsey is not entitled to qualified immunity, at least at this stage of the proceedings.

Of course, this is not the end of the matter, because it remains Mr. Sesay's burden to state a claim for relief. As I have noted, though, there does not appear to be any question that Detective Woolsey "caused" Mr. Sesay's arrest, nor that the ensuing criminal proceedings against Mr. Sesay terminated in his favor. *See Evans*, 703 F.3d at 647. To state a claim, then, Mr. Sesay need only have alleged sufficient facts that could plausibly support a finding that the arrest was the result of "legal process unsupported by probable cause." *Id.* To that end, I note that the standard for probable cause is "more stringent" than is the "lower standard of objective reasonableness required for qualified immunity." *Torchinsky*, 942 F.2d at 261. I have already explained that, based on the facts Mr. Sesay has alleged, an objectively reasonable officer would have found probable cause to be lacking. It follows, then, that Mr. Sesay has stated a plausible Fourth Amendment claim under § 1983. I must, therefore, deny the motion to dismiss insofar as it concerns this particular claim.

D.

The last of Mr. Sesay's claims I must address is, as it happens, the first: Count I, which accuses Detective Woolsey of violating Articles 24 and 26 of the Maryland Declaration of Rights.[5] *See* Am. Compl. ¶¶ 57-61.

Article 24 provides: "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges ... or deprived of his life, liberty or property, but by the judgment of his peers, or by the Law of the land." Md. Const. Decl. of Rts. art. 24. This provision is "generally interpreted as being synonymous" with the Due Process Clause of the Fourteenth Amendment. *Branch v. McGeeney*, 718 A.2d 631, 642 (Md. Ct. Spec. App. 1998); *see also Robles v. Prince George's Cty.*, 302 F.3d 262, 272 (4th Cir. 2002). Having said that, there is no need to proceed any further in analyzing this claim, because I have already explained that Mr. Sesay's Fourteenth Amendment due process claim under § 1983 cannot survive the motion to dismiss. His claim under Article 24 must fail by extension.

The same rationale guides my analysis of his claim under Article 26, which provides in relevant part: "That all warrants, without oath or affirmation, ... to seize any person or property, are grievous and oppressive ...." Md. Const. Decl. of Rts. art. 26. This article is understood to be *in pari materia* with the Fourth Amendment to the U.S. Constitution. *See Wilson*, 893 F.3d at 224; *Henry v. Purnell*, 652 F.3d 524, 536 (4th Cir. 2011); *Henderson v. State*, 597 A.2d 486, 488 (Md. Ct. Spec. App. 1991). I have already explained why I am declining to dismiss Mr. Sesay's Fourth Amendment claim under § 1983, and for those same reasons, I decline to dismiss the Article 26 claim.

---

[5] In Maryland, state constitutional claims, such as these, are not defeated by an assertion of qualified immunity. *See Robles*, 302 F.3d at 273; *Williams v. Prince George's Cty.*, 685 A.2d 884, 894 (Md. Ct. Spec. App. 1996).

## **CONCLUSION**

This case will proceed, but in a substantially pared down form. Sergeant Merryman and Detective Campbell are dismissed as defendants. Detective Woolsey remains a defendant, but Counts III and IV (false arrest and false imprisonment, respectively) are dismissed. Mr. Sesay will have a chance to proceed against him on Counts I and II, but only to the extent that these counts allege there was an unreasonable seizure in violation of the Fourth Amendment or Article 26 of the Maryland Declaration of Rights.

A separate order follows.

Date: 2/21/2019

Paul W. Grimm
United States District Judge